Good morning. My name is Robert Powell. I'm here on behalf of the Beltran family, Robert, Lori, and Kofi Beltran. First, I want to say that the appellants agree with the panel's special concurrence in terms of the Labos case extending the immunities for investigation too far in terms of existing law. But we believe that the primary issue for consideration of this court is whether or not social workers are ever entitled to absolute immunity. Under California law, they certainly are not prosecutors, and if the appropriate historical inquiry is made, we submit to you that it cannot stand that they are entitled to the types of absolute immunity that prosecutors are entitled to. They did not exist in 1871, and the very legal system in which they operate did not exist in 1871. Even with respect to papers that are required by law to file? Indeed, Your Honor, in the context of the historical inquiry, I don't think it matters whether or not there's papers that they're required to file under oath or not, because the first question is whether that was a traditional common law function, and the embler has said that that was within the criminal context and not within the civil context. Counsel, I had thought that the reason that so many constitutional requirements from criminal law apply when social workers attempt to take away somebody's child through dependency proceedings was that they were like prosecutors. They decided to initiate a proceeding which would take away parental rights. Why isn't that enough to say that they're also like prosecutors when they decide to initiate a prosecution? If it's solely the decisions to initiate a prosecution, there can be an argument that they're like prosecutors. However, that is not the basis of this suit, and that is not the basis of most suits. And the constitutional laws would apply in any context because it's the rights of familial association, and I agree that in the criminal context and in the juvenile dependency scheme, you have important fundamental liberty interests at stake. Do you need to go so far as to say they're never entitled to absolute immunity for this case? I had thought that you alleged that three defendants actually committed perjury and did so other than in the decision whether to prosecute and the prosecution filing. Right. To answer your question, in this case, no, we do not have to go that far. I believe that this case stands on all fours with Malley v. Briggs. It stands on all fours with language in Calabretta about how White was binding precedent about the general law of search warrants applying in child abuse investigations, and in Kalina. I think Kalina also means that we, for this particular case, do not have to go as far, or your honors do not have to go as far as to address the absolute immunity of social workers in all instances. It looked to me as though it was like Calabretta. It was enough for you to say they have qualified immunity and they didn't earn it here. I agree with your honor that that is true, but I think that because there is still this looming question I think presented by the Doe case of whether or not they should receive absolute immunity for the initiation and pursuit, that this case does afford that opportunity to address that situation and to look at things. Is there a need to overrule Doe on whether perjury in the initiation of suit gets absolute immunity? I thought you alleged perjury. Oh, we do. We allege perjury. Your question was is that all that we need in order to distinguish ourselves from the Labos case? Yes. Well, no, because in the Labos case— You would want to overrule that part of the Labos case. I would want to overrule the absolute immunity for investigatory functions in the Labos case because that is the heart of both cases here. The distinction of having then filed the petition and then, as mentioned by Judge Ferguson in his dissent from the panel, casting a net back over all the prior activities I submit defies reason, and it creates an incentive to file a petition in order to protect yourself rather than to protect this child. So are you or are you not urging the blanket denial of absolute immunity for social workers? I admit I am indeed urging the blanket denial of absolute immunity for social workers. Explain to the panel why we should treat social workers when they file complaints and dependency actions different from prosecutors. In the criminal prosecution context, if I may briefly, I'm hearkening back to the dissent in Hoffman v. Harris because I think it's very poignant, albeit in some sense dicta since it's just a denial of cert. I think it expresses what I want to express to you here, and that is that the historical inquiry has not been done. It has not been done as to whether the function that social workers perform is the same function that prosecutors had common law immunity for when the Civil Rights Act was passed in 1871. Were there even social workers in 1871? That's the thing, Your Honor. I find no evidence that there were social workers in 1871, that they didn't even start to come into existence in an informal sense until the early 1900s. And certainly the juvenile dependency system didn't. And that's really, Your Honor, where I see a big distinction. In Kalina, when they looked back at Embler and they talked about why they gave prosecutorial immunity, because apparently that wasn't for certain that they were going to do that, they addressed policy concerns that justified it. And they said, well, in that case, we do want to deter lawsuits, and obviously I would expect counsel to argue that you want to deter lawsuits against social workers. But in the criminal context, the prosecutor is subject to peer review and loss of a professional license. There's accountability to the electorate. And in the juvenile system, and forgive me, Your Honors, because I certainly have no idea which of you has had personal experience with the juvenile system, but it's a closed system. It's not a beyond-a-reasonable-doubt standard. There's no jury. The public can't see what's going on. They can't go to their legislators and say, we need to change this, because the average person can't walk in there. You, as a sitting judge on this court, can't walk into a juvenile dependency system. Another big distinction between what the prosecutors did in 1871 and what social workers do now is social workers are really like complaining witnesses. They file a petition, and they actually get up and testify in court, and they call the people who they are protecting or seeking to protect the children and the parents, clients. We certainly don't have that type of a function with the prosecutor. The person that they're subjecting to a criminal action will never call them a client. When they stand up in court and present like you're just describing, are they under oath? The social workers? Yes. Yes, usually, depending on the setting, yes. So why shouldn't they get absolute immunity for their advocacy in the courtroom? Well, arguably, that's what I'm saying, Your Honor, that it's not an advocacy function. It's an investigative function, and they're telling the court what they've investigated. That's what police officers do. That's what complaining witnesses do. They set out facts for the court, in this case, of their investigation, and they're not the same as a prosecutor who's urging a particular outcome. At least they are not supposed to be, and to the extent that they are. Are they represented by counsel? Yes, they are. That's another distinction. Prosecutors aren't represented by prosecutors, and yet in the juvenile system, social workers are represented by counsel. I don't understand you to be saying that social workers would be not absolutely immune if they would otherwise be absolutely immune, i.e., if they were witnesses during a trial. Right. If they would otherwise be absolutely immune. Then they are absolutely immune. Yeah, as any person. Just not because, especially because they're social workers. Absolutely, Your Honor. Okay. And did I answer Your Honor's question? Well, let's step back just a few. You said there was some possibility or you gave some acknowledgment to the possibility that the decision to file a petition might be entitled to absolute immunity, but then they might lose it because they signed the declaration. Is that correct? Correct, Your Honor. They do verify things under oath of their own knowledge, and I'm sure that the court's aware of that. Well, there were two social workers involved here, correct? Correct. And the panel gave one absolute immunity, correct? The actual majority opinion gave both absolute immunity. But even the concurrence recognized that one should get absolute immunity, the one who didn't sign, who didn't do the investigation. That's true, Suarez. Right. So what's your view with respect to Suarez? Thank you, Your Honor, for asking. Suarez in the application and declaration for warrant, which is 114 in the first volume of the excerpts of record, is actually a document that's sworn to under oath and much more akin to what the prosecutor did in Kalina. It actually is sworn to under oath, and it incorporates the petition, which is also sworn to under oath. What was that page? It's 114 of the volume one of the excerpts of record. So you just want him treated like the prosecutor in Kalina. He lied under oath in an affidavit, no absolute immunity. No absolute immunity. And remember, the facts of this case are, and the evidence produced during the discovery, was that Suarez did all of the investigation. And I would find it hard to understand how then having someone else in the office sign a document that's akin to a warrant, that results in the taking of protective custody of a child, immunizes them. On Chin, as I understood it, your complaint alleged that she had no personal knowledge of the facts. It seemed to me that that allegation in your complaint meant that even if the facts stated in her petition were false, she could not be committing perjury like the prosecutor in Kalina. She was just a supervisor deciding to prosecute based on what Suarez told her. No, that certainly would not be my position. I think that sounds almost like the position of the district court. Why isn't it so? I mean, you said in your complaint that she had no personal knowledge of any of the facts. Because that's the antithesis of signing a verification. That's the antithesis of signing a verification. A verification is representing to a court and to others, I have personal knowledge of these facts. And it just harkens back to our fourth amendment law. What is the language of the verification? I had thought it just meant everything I've said here is true to the best of my knowledge. I have it here, Your Honor. I declare under the penalty of perjury under the laws of the state of I cannot make sense of Suarez being immune because the entire thrust of foregoing is true and correct. But it looked like everything that you alleged was a lie was not in the foregoing. It was in the attachments, which was Suarez's affidavit. And it says all attachments. It does say all attachments? All attachments. And since I happen to be on the page, which in the excerpt, Volume 1 of 2 at page 108, there was a mention by Judge Ferguson in the dissent about the requirement that social workers are the ones who verify. And I just noticed this morning that it does not say signature. It would seem that it would say signature of social worker, but it doesn't. It says signature of petitioner. And I think if I could just briefly go back to the juvenile context, because I think it's important. We have a system right now that goes across. Stop the clock. Somebody do something. We lost our judge. There he is. Hello, Judge Goldilocks. Can you hear us? Yeah. We seem to have lost him. I can hear you, thanks. And I was out for a while. I'll go back and listen to the tape afterwards. So just proceed. Thank you, Your Honor.  dissenters, are not necessarily the ones who are going to be held accountable They sign on information and belief in their complaints. All that we've checked out, all criminal prosecutors. What would you have a person in Finn's position do? Reinvestigate the facts? I would not have Emily Teejan have signed that petition under any circumstance. Because she's signing it. You would require the person that did the actual investigation to sign it? Yes, Your Honor. And I believe that's what the You don't think that would place an undue burden on social workers and their supervisors? To sign the petition under oath for the investigation that they did? No, I do not. And it would effectively remove supervisory authority over the actions of field investigators? Oh, not at all, Your Honor. I mean, supervisors would still have supervisory authority over what their social workers I don't understand what you're saying. You're saying she shouldn't have signed it. The person that did the investigation should have signed it? Correct. Does that mean in every instance, every dependency petition, would have to be signed by the person that did the field investigation? I believe that that's what verified Okay, what would happen to supervisors? Nothing would change in their day-to-day performance of their duties. Well, they couldn't sign these. They couldn't review them. They couldn't bring their own past experience as field investigators, possibly themselves. They couldn't tell field investigators when they thought the facts were incomplete or insufficient and that further investigation needed to be done. None of those things could happen, right? I don't agree with you, Your Honor. I don't understand why they couldn't do all of those things and, in fact, bring their experience to bear and ask that social worker. Like in this case, Ms. Tiegen speaking to Ms. Suarez. Ms. Suarez, you went and you spoke to the doctors and you received these complaints. Did you go back and did you talk to the parents and see if that was their version of events of history? They said, yes, I did, and that turned out to be incorrect. You would not permit absolute immunity for the person that signed the complaint, the supervisor. If it turned out to be incorrect what the doctors had said? Yes. I would expect the social worker, because they are bound by Title 31 regulations as well, to share this information, and 820.21 makes clear the California legislature wants them to tell the whole story. I would expect them to at least, if they decide to go forward, to tell the whole story so that when that judge gets that in an ex parte context they have. Do you think this is different than a police officer testifying in support of a search warrant? No, again, in this case I believe it is akin to a police officer submitting a statement under oath in support of a search warrant. I do believe that. But certainly police officers in that context and social workers in this context are sometimes going to be reporting things that they themselves did not do, because there can be many investigators. Somebody then collects all the information and goes and fills out the warrant affidavit. That doesn't mean that he himself spoke to everybody involved. No, that's true, but under the case law of Hervey and Franks, they are still expected to say the source of their information, and if they have doubts about an informant's credibility, they are supposed to relate that. They are supposed to tell the whole story in the sense of what's reasonable, and that's not what we have in this case. And what we do, if we allow them to be shielded by absolute immunity in the context of juvenile cases where there's only preponderance of the evidence and it's not open to public scrutiny, is we invite just the kind of thing that happened here, just the kind of thing that happened here. That you allege happened here. What? That you allege happened here. Correct, Your Honor. Can I ask whether you, I believe that if we agree with you on any of these grounds with regard to absolute immunity, do we then reach the qualified immunity question or do we remand to the district court? Oh, no. And I am not certain that, oh, you do remand to the district court. I don't believe the qualified immunity question is before the court. That's what I'm asking you. Do you believe it's before the court? I agree that it would have to be remanded. Well, why isn't it? It was briefed to the district court, was it not? It was briefed. It's just a summary judgment question. Well, actually, the course of events was that both counsel first only briefed on search warrants and on all the law, Franks and Hervey. That's what both counsel did in the district court. Then I submitted a motion to reconsideration when the court came back with a ruling that said absolute immunity. And I said, no, that's not correct. And I went into the kind of arguments I'm making in front of this court today. I don't recall counsel for the appellees filing any type of a brief in response to that motion for reconsideration. But it was originally briefed as a qualified immunity case. No, it wasn't. It was originally briefed as a search warrant case. I'm sorry, qualified immunity in that context. Yes. Yes, in the search warrant context. That's true. Okay. All right. So is that the issue before us? If the court is only taking a focus on this particular case, then that is the issue before this case. No, this is simply saying we can decide what we feel like deciding. I really was asking a somewhat different question. Yes, sir. And that is, is the question of qualified immunity properly posed before us so that if we chose to address it, it would be ready to be addressed? And that would presuppose that you would, well, that might presuppose that you win on the absolute immunity point. We say no absolute immunity. Let's just give that as a hypothetical. And then the question would be what we do. Do we then go on and consider qualified immunity or do we send it back to the district court? I would submit to you that certainly the absolute immunity is before you because that's the district court's decision. Absolute immunity applies. Was qualified immunity briefed to the three-judge panel? I believe it was. It was to the three-judge panel. I'm sorry, I take that back. It wasn't in my case because my focus was on the absolute immunity argument. So when you appealed from the district court's judgment, was the issue of qualified immunity briefed to our three-judge panel? It was in the sense that the argument was that only qualified immunity should apply. I didn't go beyond that, and my recollection is because at the district court hearing on the motion to dismiss, I pointed out to the court there are other things that we actually could have alleged in this complaint. But if you're telling me, Your Honor, that absolute immunity applies, then it doesn't matter what I allege in this complaint. Right. And so that's my- Well, the red brief certainly has a qualified immunity section. I do address it because it- Well, wait. The red brief is not your brief. The red brief has a qualified immunity section. I'm sorry. I believe I have it in my reply responding to some extent to counsel's things. But strictly speaking, Your Honor, to answer your question, strictly speaking, as it came up from the district court, this is an absolute immunity case. As it came up from the district court- You would prefer not to have absolute- qualified immunity decided on the complaint. I think- I can't speak to what the court could do in terms of whether- Well, I'm asking- I'm just asking from your perspective, you'd rather see some development of the record. Isn't that right? For qualified immunity. Yes, Your Honor. I think that would be appropriate. Boy, that was a hard yes to get to. But it's also not quite your choice. If a motion to dismiss was made on qualified immunity grounds, which I gather it was- No absolute immunity grounds. No. The motion to dismiss was made on qualified immunity grounds, as you described it. And it was the judge who came up with the absolute immunity. That's what you just described to us before. You're right. That's right. Because the argument was the search warrant law. Okay. Both of us- Therefore, it's not your choice whether you're going to be able to- Someone or other is going to have to decide whether on the pleadings there is or isn't qualified immunity. It's either us or the district court. I understand, Your Honor. However, because the court went to absolute immunity, I felt there was a couple of allegations that I could have yet included, like the four unfounded referrals- I mentioned that in the briefs- that we never got to do. Because the court was saying at the argument, no, this is absolute immunity. Immunity that you could amend your complaint. Right. To include a few more allegations. I'm troubled because we reviewed de novo. We're stuck with the case. It's our case. And 12b-6 is just us, the appellate panel, looking at the complaint. And on the complaint that you've got, I'm not clear on why there wouldn't be qualified immunity, even assuming no absolute immunity. Because we've alleged the fabrication of evidence. We've alleged the misrepresentation of facts. Let's talk about the fabrication. Shin says the attachments are true in her verification, but she also does not allege any personal knowledge. Now, we get that in search warrant cases all the time. A policeman in Seattle files an affidavit saying a policeman in Columbus, Ohio, told him this and told him that. If the policeman in Columbus, Ohio, lied, that doesn't mean the policeman in Seattle that filed the search warrant affidavit. I get sued. Indeed, but I would see that argument as being then that Suarez is not entitled to qualified immunity because, again, she's the one who did the investigation and related these facts to T.G. On Suarez's investigation, a lot of what you say, that struck me as the critical one, actually. And a lot of what you say about Suarez is basically she never talked to the father, her investigation was inadequate, rather than that she lied. One of the clear lies of Suarez. There were clear lies in her. The part about selling the house to get new doctors. Well, she says that the mother told her that she had to sell her house to get better doctors for her child. And our allegation is that that's a lie. And your allegation is the mother never told her that. She's lying about what the mother told her. That's right. And she makes it sound in one of her allegations that the mother is basically running from the Dr. Franks to this new doctor in Modesto where they're hoping to buy this house. But that's not the case at all, being a prudent mother. She did not want to move to Modesto and not have a doctor in place when she got there. That's all she had done. And, Your Honors, may I at some point? You have about six minutes left.  Yes, may I? My colleagues have other questions. Well, I have one other question. If we did get to the qualified immunity issue, do you agree that the basic structure is a Franks structure, that is that we would look at the allegations, take out the ones that you say are lies, and then see if what was left would leave us with probable cause? Is that structurally the right way to go about it? It would appear structurally that is the correct way to go, also including taking into account the things that were not put into this arrest warrant or protective custody warrant, and there are several of those as well.  Thank you, Your Honor. Thank you. We'll hear from the opposing counsel. Good afternoon, Your Honors. May it please the Court. My name is Melissa Kenioklis, and I represent the defendants in this action, social workers Emily Chin and Melissa Suarez. At issue in this case is the conduct of the social workers in filing two documents. First, the warrant petition, and second, the application for a protective custody warrant. First, with regard to the warrant petition, in filing the warrant petition, the social worker Emily Chin instituted child dependency proceedings under California Welfare Institution's Code Section 300. This was conduct that is critical to the judicial process and analogous to the function a prosecutor performs in filing a complaint in a criminal proceeding. Counsel, I have trouble seeing how you get past Kalina v. Fletcher when you argue for absolute immunity. Kalina v. Fletcher says that there is no absolute immunity for a prosecutor making false statements of fact in an affidavit. Period. End of story. Well, it goes on just to hammer at the same thing for a while. And then Justice Scalia, who really did not like this very much and wrote separately, said a conscientious prosecutor reading our cases should now conclude that there is absolute immunity for the decision to seek an arrest warrant after filing an information, but only qualified immunity for testimony as a witness in support of that warrant. He goes on to criticize that, but he says that's the law. It seems kind of open and shut that Suarez, anyway, could not prepare an affidavit to be submitted to the court that contained lies and expect to get absolute immunity for it, also could get his qualified immunity. Your Honor, are you referring to the declaration in support of the protective custody warrant? Suarez. Suarez is. Okay. Yeah. Chin strikes me as a different animal for the reasons we've discussed. Right. And Your Honor is correct in the sense that with respect to the warrant, the application for a custody warrant, the social worker, as my opponent pointed out on excerpts of Record 114, she did seek custody based solely on the allegations in the warrant petition. So she didn't swear out any new facts or allegations. She didn't act necessarily as a complaining witness. You're talking about Chin now, right? No, I'm talking about Melissa Suarez. Well, Suarez wrote all the details of the investigation in her affidavit. Well, no, Melissa Suarez just simply referred to the petition. It would be as if the social worker referred to the information. The warrant petition on page 107. Wait a minute, I've got that right here. There's an application, and then it looked like Suarez is the one who gave all the details that supported the petition. Did I get it mistaken? We do a lot of cases like this. I would respectfully disagree, Your Honor. On page 107 is where the warrant petition starts, and that is where Ms. Chin swears petitioner on information and belief alleges the following. She alleges that the child named comes within the jurisdiction of the juvenile court on information and belief. On page 108, she says that the foregoing and all attachments are true and correct. Well, on pages 110 through 113 are the allegations in the petition. This is analogous to the allegations and information in a criminal case. Ms. Chin is the one that reviewed and analyzed the investigation of Melissa Suarez. She is the supervisor, drew from her extensive experience as a field investigator, decided what allegations to include in this petition. She determined what to include. We don't know what they decided to exclude that may or may not have been gathered from that investigation. But what ended up in pages 107 to 113 is the charging document. So 114 is not an attachment? 114 is what Suarez signed. That's correct. 114 is what Suarez signed, and Suarez merely checked a box saying that the child should be taken into protective custody based solely on the allegations contained in the warrant petition. But I'm confused about one thing. Ms. Chin did state under penalty of perjury that, as I understand it, that the attached document is true, which is different than a complaint. That the allegations in the petition are true. Yes, are true. Right. Isn't that the Kalina line that Judge Kleinfeld was stressing before? It appears to be. I think the focus should be on the function of what Ms. Chin was doing. And in filing the warrant petition, the function she was doing was instituting child dependency proceedings. Under California law, the only individual that can institute child dependency proceedings is a social worker.  And under California law, mandated reporters, such as the reporters in this case, are entitled to assert to confidentiality. And the allegations that are included in this petition, some of the allegations came from a mandated reporter. How far does that get you? Let's say we buy into that. How far does that get you? Does everything that they do afterwards on the paper get covered by that? No. And how far it gets you is what the president. So will they actually get on the stand and testify? They're not covered by. Well, in your example, Your Honor, that would be like. It's a question. The question would be under Briscoe v. LaHue. It would be similar to a police officer taking the stand and testifying. Under common law, witnesses were granted absolute immunity. And just as under common law, prosecutors were granted absolute immunity. Complaining witnesses were not. That's the line we're dealing with. Right. And the question is in filing the warrant petition. No, the question isn't filing the warrant petition. The question is signing under penalty of perjury that the attachments are true. That's the question. And the social worker can't institute dependency proceedings. That doesn't matter. She still signed it under penalty of perjury and, therefore, acted as a complaining witness. No? It's true that she signed it, but she didn't act as a complaining witness in that she didn't attest that she had personal knowledge of everything and that this was the only way that the social worker could institute child dependency. I don't understand that. You said this was the only way because only a social worker can initiate anything. But I'm looking at page 114, Suarez's sworn statement, and she says that she's employed as a social worker. That's correct. So she's a social worker. And she also says that the petition is incorporated by reference in what she says. So it looks like she is swearing to the petition and she has personal knowledge. Right. And she's a social worker. And I think the distinction here is the application and declaration in support of a protective custody warrant on page 114, arguably the social worker is acting as a complaining witness. She is saying that she's seeking custody of this child based on the allegations in the petition. She arguably is acting as a complaining witness. Ms. Chin, however, is not acting as a complaining witness. She's instituting dependency proceedings. Certainly dependency proceedings can be instituted without the need to bring a child into protective custody. The social workers here could have made a choice of just filing the petition, allowing the child to remain at home. The juvenile court would have set a hearing within 30 days, and then the court would have decided whether the child came within its jurisdiction. Are you saying that under Kalina, Suarez gets qualified immunity and Chin gets absolute immunity? I think if the court is leaning in that direction, I think that under Kalina, if any social worker acted as a complaining witness in this case, it would be Melissa Suarez because the declaration in support of a protective custody warrant did not institute child dependency proceedings. The warrant petition did. And if the court is leaning toward a qualified immunity analysis, I would submit that that issue was briefed both at the district court and at the panel level by the social workers here. And this court has the authority to affirm on any grounds. And if the court is inclined to find that there was to do a Franks analysis, although I don't believe the circuit has ever applied a Franks analysis in this type of a case, a social worker immunity case. Would they at least get to amend? I'm sorry? Wouldn't they at least get to amend? The plaintiffs get to amend their complaint. That's certainly within the court's purview to allow the plaintiffs to amend, but in doing the Franks analysis. But we couldn't affirm. What you're saying is we do a qualified immunity, and what we'd have to find is they didn't state on the facts as they stated them, those qualified immunity. And normally if the district court has found something like that, it would have, as a matter of course, given them leave to amend. So we can't possibly affirm what the district court did. In the sense that if the law was not clearly established, it wouldn't matter whether they could amend. Well, but they could come up with more facts. They could come up with more facts. Which might bring it. I mean, let's say that in the facts they have alleged there would be qualified immunity, but if they lost that at the ñ normally, as somebody pointed out, this is a summary judgment issue. But you could conceivably do it on a 12B. But if that happens, they get a chance to go back and add more facts or try to add more facts, right? Right, Your Honor. However, in this instance, the binding authority at the time, when the social workers did this conduct, was Coverdell versus Department of Health and Human Services. And that controlling authority said that a social worker was entitled to absolute immunity. But the absolute immunity law can't be the law we're talking about. I mean, we're not trying to encourage people to do things that are against the law by giving them absolute immunity. It's the substantive law we're talking about. Whether they violated ñ even if they have absolute immunity, they can still violate substantive law. We're just not going to find out about it. But that doesn't mean it was fine. Right. The social workers in this case, though, were ñ this court could find that they were acting in good faith based on what they understood the law to be and the law at the time. What law are you talking about? The absolute immunity law? Well, under Coverdell, social workers were given absolute immunity for seeking a relationship. I understand that. But why is that relevant law for purposes of 1983 analysis, qualified immunity analysis? Well, whether the law was clearly established at the time. So you look at the constitutional violations. Right. What's the constitutional violation that they were alleging here? That the plaintiffs are alleging? Yes. They're alleging that the social worker included false information in the petition and failed to include potential exculpatory information. Resulting in what constitutional violation? Well, resulting in the child being removed and dependency proceedings being instituted and acted upon. Which is a violation of what provision of the federal constitution? The 14th and 14th amendments. So I wasn't ñ I didn't follow what you just said. You said that, well, Coverdell applied, absolute immunity applied, therefore qualified immunity would apply. But I don't see how that could be right because when the social workers are actually filling out the information, they know they have an obligation under California state law not to commit perjury. And they can't be sitting there thinking, it's okay, I'm going to commit perjury, but I have absolute immunity. So I have a reasonable basis to believe that it's okay. Well, state law I don't think can override federal immunities. I think what Judge Wardlaw is getting, and I'm interested in it also as another judge up here, surely you are not arguing that under Coverdell a social worker could say to themselves, you know, I have absolute immunity, I can do or say or swear to anything I want, and I will not be held personally liable. That can't be the test. Certainly not, no. So what is the test for qualifying for qualified immunity? What's the substantive test? For when a social worker would be entitled to qualified immunity. Yeah, on facts like this case that's before us. Let's say we're at summary judgment and they file with their admitted complaint and then they move for summary judgment and maybe you cross move. What do you say that would entitle them to be cloaked with qualified immunity? And I submit that the analysis here would be whether the officer acted with or the social worker acted with deliberate or reckless disregard, whether her conduct was intentional or whether it was with reckless disregard to the truth or falsity of what's contained. You would say that in response to their allegations? Right, that they would need to make a showing that the social worker acted with deliberate or reckless disregard and that that reckless or disregard and inclusion of that information in the documents they submitted to the court had an impact. That without, with that information, or if we had excised the alleged misrepresentations and included the alleged exculpatory information, that the outcome would have been different. In this case, that the magistrate judge would not have issued a custody warrant. And has that analysis been undertaken in this case? In this case, it hasn't, Your Honor. Both the district court and the panel concluded the social workers were entitled to absolute immunity. It was briefed, but that analysis was not undertaken. Can I take you back to the excerpts of record, page 110, which was the form attached to the petition that was signed by Suarez, I believe. No, Bejan. So on page 110, paragraph B2, it refers to the final investigation, the investigating social worker. Investigating social worker. Investigating social worker is Melissa Suarez. And again, she did not sign this petition. It was her supervisor who signed the petition. Melissa Suarez, of course, signed the custody warrant application. Okay. Thank you. Thank you. You have about five minutes left for rebuttal. We'll let you take four of that. Your Honor, at this point, unless the panel has some questions, I would submit. So I wanted to offer that. Case just argued. We can submit. We are adjourned. Thank you.
judges: Kozinski , Reinhardt, Kleinfeld , Hawkins, Wardlaw , Fletcher , Gould , Paez , Berzon , Clifton, Ikuta